**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAED KUTOM | CIVIL ACTION |
|    Plaintiff, | |
| v. | COMPLAINT 1:17-cv-04854 |
| SWC GROUP, L.P., f/k/a SOUTHWEST CREDIT SYSTEMS, LP | JURY TRIAL DEMANDED |
|    Defendant. | |

**COMPLAINT**

NOW COMES the Plaintiff, RAED KUTOM ("Plaintiff") by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, SWC GROUP, L.P. f/k/a SOUTHWEST CREDIT SYSTEMS, LP ("SWC") as follows:

**NATURE OF THE ACTION**

1.  Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692 and for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227.

**JURISDICTION AND VENUE**

2.  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as SWC conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

1

**PARTIES**

4. Plaintiff is a consumer and natural person over 18 years of age who, at all times relevant, resided in the Northern District of Illinois.

5. Defendant SWC is a Texas corporation with its principal place of business located at 4120 International Pkwy., Suite 1100, Carrollton, TX 7500. SWC's registered agent is Jeff A. Hurt and is also located at the above address.

6. SWC regularly engages in the principal business of collecting delinquent debts.

**FACTS**

7. In or about December, 2014, Plaintiff accessed his credit report and noted approximately 5 to 6 credit inquiries ("credit pulls") by Comcast Corporation ("Comcast").

8. Plaintiff maintained a Comcast account at that time and assumed that the credit pulls were related to his account.

9. In February, 2015, Plaintiff received a letter from SWC, indicating account balance of $1,875.10 owed to Comcast ("subject debt"[1]).

10. Upon information and belief, the subject debt was in default at the time the account was transferred from Comcast to SWC for collection.

11. Also in February, 2015, SWC placed several calls to Plaintiff's cellular telephone which had, and continues to have, a telephone number ending in 2567.

12. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of this cellular telephone number. Plaintiff is, and has always been, financially responsible for this cellular phone and its services.

---

[1] SWC was known as Southwest Credit Systems, LP at the time of the February, 2015 letter.

13.   In February, 2015, in a telephone call, SWC informed Plaintiff that it was calling to collect a delinquent debt on behalf of Comcast.  Plaintiff informed SWC that he did not have a delinquent debt with Comcast then advised Plaintiff to contact Comcast directly to attempt to resolve the situation.

14.   Plaintiff then immediately called Comcast.  During this call, Comcast advised Plaintiff that the amount of $1,875.10 was a past due bill for equipment and services relating to an address in Chicago. Comcast also provided an unfamiliar account number linked to the subject debt. Plaintiff informed Comcast that he did not reside in Chicago and that there appears to be fraudulent activity. Comcast further advised Plaintiff that his name and social security number were used to create the fraudulent account. Comcast advised Plaintiff that it would investigate the matter and that Comcast will take care of it.  The call then ended.

15.   On February 20, 2015, Plaintiff contacted the Tinley Park Police Department to report the suspected fraud. A police officer came to Plaintiff's home to investigate the matter.  An incident report was ultimately generated by the dispatched police officer.

16.   In or about February, 2016, Convergent Outsourcing, Inc. ("Convergent") sent Plaintiff several letters demanding payment of the subject debt.

17.   Also, in or about February, 2016, Convergent called Plaintiff several times about the subject debt. Plaintiff explained to Convergent that the subject debt was not his, that he believed there was fraudulent activity in connection with it, that he had already advised Comcast accordingly, and requested that Convergent refrain from calling him any further.

18.   On June 13, 2016, Plaintiff formally filed a Fraud/Identity Theft Claim with Comcast and included his incident report number.

19.   In June, 2016, Plaintiff received a call from SWC.  Again, SWC informed Plaintiff that it was calling to collect a debt on behalf of Comcast.  Again, Plaintiff informed SWC that he did not have a delinquent debt with Comcast.  Plaintiff further informed SWC that he was the victim of identity theft, the account did not belong to him, and that he filed a police report in connection with the circumstances. He also advised SWC that Comcast is aware of the situation and has promised to resolve it.

20.   In December, 2016, Plaintiff noted that SWC began erroneously reporting the subject debt on his credit reports nearly two years after he informed both SWC and Comcast that he did not owe the subject debt.

21.   On January 3, 2017, at 11:20 a.m., SWC called Plaintiff on his cellular phone. In this call, Plaintiff again explained the circumstances to SWC and asked SWC not to call again.  Nonetheless, SWC's representative responded that the law allows her to call and that she will call again.

22.   When the above call connected, Plaintiff noted an audible click from the receiver indicating that the call was placed using an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. §227(a)(1).

23.   Upon information and belief, the ATDS employed by SWC transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

24.   On January 4, 2017, at 9:05 a.m., SWC called Plaintiff again on his cellular phone. Plaintiff noticed the same female voice on the phone.  The SWC representative said "hello" and then hung up on Plaintiff.

25. On January 6, 2017, at 11:35 a.m., SWC called Plaintiff again on his cellular phone. Plaintiff noticed the same female voice on the phone. The SWC representative said "hello" and then hung up on Plaintiff.

26. On January 9, 2017, at 11:06 a.m., SWC called Plaintiff again on his cellular phone. Plaintiff noticed the same female voice on the phone. The SWC representative said "hello" and then hung up on Plaintiff.

27. Notwithstanding Plaintiff's requests that SWC's collection calls cease, SWC placed, or caused to be placed, no less than 5 calls to Plaintiff's cellular phone in the month of January, 2017. Specifically, the calls came from the phone number 800-462-3892, a phone number associated with SWC.

28. Plaintiff's demands that SWC's phone calls cease fell on deaf ears and SWC continued with its illegal collection calls.

29. In light of the frequency of the calls, it can be further inferred that SWC utilized an ATDS, as defined by 47 U.S.C. §227(a)(1), to place the unwanted calls to Plaintiff's cellular phone.

30. The calls SWC placed to Plaintiff's cellular phone were not placed for emergency purposes pursuant to 47 U.S.C. §227(b)(1)(A)(i).

31. On April 11, 2017, Plaintiff obtained his Equifax 3-Bureau Report ("credit report").

32. The credit report revealed that SWC was reporting the subject debt in collection and with a past due balance of $1,319.

33. Specifically, the credit report showed the following:

| SOUTHWEST CREDIT SYSTEMS, L.P. | | | |
|---|---|---|---|
| | Equifax | TransUnion | Experian |
| | Reported | Not Reported | Reported |
| Collector: | SOUTHWEST CREDIT SYSTEMS, L.P. | | SOUTHWEST CREDIT SYS |
| Account Number: | 6187XXXX | | 6187XXXX |
| Date Opened: | 12/2016 | | 12/2016 |
| Balance Date: | 03/2017 | | 02/2017 |
| Balance Amount: | $1,319 | | $1,319 |
| Date of Status: | 03/2017 | | 02/2017 |
| Status: | Closed | | Open |

## DAMAGES

34.   Plaintiff has suffered emotional distress as a result of SWC's actions.

35.   SWC's unlawful collection activities have caused Plaintiff actual harm, including but not limited to, physical harm, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, increased risk of personal injury due to the distraction caused by the phone calls, diminished value and utility of his telephone equipment and telephone subscription services, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of her telephone services.

36.   Concerned about the violations of his rights and the invasion of his privacy, Plaintiff sought the assistance of counsel.

## COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

37.   Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

38.   Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

39.   The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

40. SWC is a "debt collector" as defined by §1692a(6) because it's a business, the principal purpose of which, is the collection of debts and uses the mail and/or the telephones to collect delinquent medical accounts allegedly owed to a third party.

41. Moreover, SWC is a "debt collector" because it acquired rights to the subject debt after it was in default. 15 U.S.C. §1692a(6).

42. SWC used the phone to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

43. SWC's communications to Plaintiff were made in connection with the collection of the subject debt.

44. SWC violated 15 U.S.C. §§1692d, e(2), e(8), and e(10) through its debt collection efforts on a debt that was never incurred or owed by Plaintiff.

### a. Violation of FDCPA §1692d

45. SWC violated §1692d by engaging in abusive, harassing, and oppressive conduct by calling Plaintiff's cellular phone and informing Plaintiff that it will continue to call him even after he requested that it stop calling. Moreover, SWC continued placing the relentless calls after he requested that SWC stop, and, each time he was hung up on.

### b. Violation of FDCPA §1692e

46. SWC violated §1692e(2) by falsely representing or attempting to confuse Plaintiff that the subject debt was collectible when in fact it was not collectible because Plaintiff never incurred the subject debt. As pled above, Plaintiff was a victim of identity theft and had previously informed SWC of this fact.

47.    SWC violated §1692e(8) by communicating false credit information to the credit reporting agencies causing them to report the subject debt as in collections and with a past due balance amount of $1,319 on Plaintiff's credit reports.

48.    SWC violated §1692e(10) by engaging in deceptive conduct as the debt was not collectible or owed when SWC called Plaintiff in January 2017 and when the false credit information was reported by SWC. SWC further engaged in deceptive conduct when it informed Plaintiff in the January 3, 2017 call that it had a right to continue to call him after he requested that the calls cease.

49.    SWC attempted to coerce and induce Plaintiff into paying a debt that was not legally collectible or owed.

50.    As an experienced creditor and debt collector, SWC knew or should have known the ramifications of collecting on a debt that was never incurred.

51.    SWC knew or should have known that the debt was not owed.

WHEREFORE, Plaintiff RAED KUTOM requests that this Honorable Court:

**a.**  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

**b.**  Award Plaintiff statutory damages, in an amount to be determined at trial, for the underlying FDCPA violations;

**c.**  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and

**d.**  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

52.    Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

8

53. SWC placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

54. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

55. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

56. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

57. Upon information and belief, the predictive dialing system employed by SWC transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

58. SWC violated the TCPA by placing no less than 5 calls in January, 2017, to Plaintiff's cellular phone, using an ATDS. Moreover, Plaintiff demanded that SWC cease calls to his cellular phone.

59. As pled above, Plaintiff was severely harmed by SWC's collection calls to her cellular phone.

60. Upon information and belief, SWC has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

9

61.   Upon information and belief, SWC knew its collection techniques were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

62.   SWC, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

63.   Pursuant to 47 U.S.C. §227(b)(3)(B), SWC is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), SWC's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff RAED KUTOM requests that this Honorable Court:

a.   Declare SWC's phone calls to Plaintiff to be violations of the TCPA;
b.   Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
c.   Award any other relief this Honorable Court deems equitable and just.


**Plaintiff demands trial by jury.**


**Dated:** June 28, 2017                                    Respectfully Submitted,

/s/ Majdi Y. Hijazin

Majdi Y. Hijazin, *Of Counsel*
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188
mhijazin@hijazinlaw.com